213    110|
33 SC 472|

## McCullough *v.* Ford Natural Gas Company, Appellant.

*Ejectment—Assumpsit—Action—Corporation.*

Where the manager of one company wrongfully turned gas into the line of another company of which he was president, the former company may maintain assumpsit against the latter for the gas without previously establishing title to the well from which the gas was produced by an action of ejectment.   The defendant's possession in such a case is not adverse.

Argued Oct. 11, 1905.    Appeal, No. 154, Oct. T., 1905, by defendant, from judgment of C. P. Armstrong Co., Dec. T., 1904, No. 122, on verdict for plaintiff in case of R. A. McCullough, Receiver of the Manufacturers' Natural Gas Company v. The Ford Natural Gas Company.    Before MITCHELL, C. J., FELL, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit to recover the value of natural gas.    Before THOMAS, P. J., specially presiding.

At the trial the jury returned a verdict for plaintiff for $1,566.68.

On the rule for a new trial THOMAS, P. J., filed the following opinion :

While a number of reasons, mostly with reference to the answers of points, are assigned for the granting of a new trial, but two were urged therefor upon argument.    It was urged there, as upon the trial, that the plaintiff must first establish his title to the well from which the gas was produced by an action in ejectment before bringing this action for compensation for the gas taken ; and, secondly, that the plaintiff had mistaken his form of action, as assumpsit would not lie.

There is no doubt but that if defendant were in adverse possession under a claim of title, that question must first be determined by an action of ejectment before an action for the gas taken would lie, and such is the trend of all of the authorities cited by defendant upon this subject.    The trouble with this case is that the facts do not meet the very necessary element of being in adverse possession.

The fact is that the plaintiff company placed its supervising manager in charge of the property, and it never had any notice of any adverse claim of title until this suit was brought.    The said manager happened to be the president of the defendant company, if, indeed, he was not the company itself.    Now, the said manager could not turn over to himself, as president, without right or authority, the property of plaintiff without any notice, and then claim that the company of which he is president holds or claims to have an adverse title.

John Wick, Jr., was the manager of the company that owned

this well.  If he, as president of the defendant company, undertook to acquire title or possession, or both, of the well and did so without any authority of law, he got for the defendant no title, and the defendant company had ample notice thereof and was bound thereby.  The defendant took no title and was bound to know that fact and cannot set up such claim of title for the purpose of putting plaintiff to his possessory action. No such title is so acquired as to require an action of ejectment to try it.  As well might a gas company enter a stranger's property and take gas therefrom having first taken a lease from one of its own officers who assumed to act as attorney in fact for the real owner, but had no such authority conferred upon him, and then, when sued for the value of the gas taken, attempt to raise the question of adverse title.  The knowledge of John Wick, Jr., was the knowledge of the defendant company, and this being true, they were bound to know, as the testimony shows, that it had no claim of title which it could possibly interpose to prevent recovery and require a determination of by a possessory action.  From their own showing as to claim of title, there is nothing to be tried by ejectment.

As to the second question raised, it will be readily admitted that assumpsit will not lie to try title to the product of real estate where defendant is in possession under a claim of title. That was not the question involved, and we trust defendants would more readily appreciate their position if they once came to see that they were not in adverse possession, but what actual possession they had was by the act or permission of plaintiff's manager and for the purpose of conveying the gas from the said well to its own line.  It is true that the same man was defendants' president, and that seems to have been confusing enough to lead defendants to believe that the action taken by that individual was the action of the defendant company, without regard to the relation he bore to the plaintiff's company. John Wick, Jr., was plaintiff's manager, and when he as such and without any notice to the plaintiff that he was acting in any other capacity, turned the gas into the defendant's line, his conduct was not other as relates to the defendant of which he was president, than if he had been an entire stranger to defendant and only acting in the capacity of an officer of plaintiff. Indeed, the defendant is in a worse position if possible, for it

was bound by all the knowledge of the rights of plaintiff within the knowledge of its president, which knowledge was undoubtedly more extensive than defendant would ordinarily have been able to acquire with reference to a company whose members were all strangers.

We really have the fact of plaintiff's manager turning its gas over to defendant who receives and consumes the same, and in such case is liable to answer for the value thereof in assumpsit as on an implied or constructive contract. But had defendant taken and consumed the gas without permission of plaintiff's officer, the plaintiff might waive the tort and sue in assumpsit.

We find here the relation existing to be that of the plaintiff owning the well of the defendant using the gas, and in possession to no other extent than was necessary for the purpose of taking and using the gas. This is a state of facts from which the jury should imply a promise to pay.

In the case of Hertzog v. Hertzog, 29 Pa. 465, the court says, after defining constructive, implied and express contracts: " The law ordinarily presumes or implies a contract whenever this is necessary to account for other relations found to have existed between the parties. . . . Every induction, inference, implication, or presumption in reasoning of any kind, is a logical conclusion derived from, and demanded by, certain data or ascertained circumstances. If such circumstances demand the conclusion of a contract to account for them, a contract is proved; if not, not."

The facts in this case were ample to support a contract by presumption or implication, without the proof of an express contract.

The very transaction of defendant with plaintiff's manager in acquiring the gas was itself a promise and would support an action of assumpsit.

As was said in the case of Adams v. Columbian Steamboat Company, 3 Wharton, 75 : " The transaction includes the promise to pay, if the article is obtained. I do not say it is inferred. Though nothing is said, the transaction is itself a promise, as distinctly understood as if uttered ; but if it was an inference, still it was for the jury and not for the court."

Had the act of defendant been one purely of trover and con-

version, it being shown that plaintiff converted the gas, plaintiff might have waived the tort and sued in assumpsit, the same as where there is a contract express or implied: 2 Ency. Pl. and Pr., p. 1022; Boyer v. Bullard et al., 102 Pa. 555; Bethlehem Borough v. Perseverance Fire Company, 81 Pa. 445; Pryor v. Morgan, 170 Pa. 568.

We are persuaded that both of these questions must be decided against the contention of defendant, and as no other was raised upon argument the rule is discharged and a new trial is refused.

Judgment was entered on the verdict. Plaintiff appealed.

*Errors assigned* were various instructions including refusal of binding instructions for defendant.

*M. F. Leason* and *C. E. Harrington*, for appellant.

*H. A. Heilman*, with him *R. A. McCullough*, for appellee.

PER CURIAM, October 30, 1905:

This judgment is affirmed on the opinion of the court below refusing a new trial.