FIRST NATIONAL BANK OF WASHINGTON v. EUREKA LUMBER COMPANY.

(Decided October 25, 1898.)

*Promissory Note—Endorser— Judgment—Merger.*

1. An endorser of a promissory note is liable, as surety, without demand upon the maker, or notice of dishonor. *The Code*, Section 50.

2. Where judgment is rendered against the maker, the note as to him is merged in the judgment—not so as to the sureties, when not made parties, their liability to the holder still exists. *The Code*, Section 186.

3. When the evidence is conflicting upon the matter of credits to which a note may be entitled, it is error to charge, that if the jury believe the evidence, to find the amount of the recovery at the face of the notes with interest.

CIVIL ACTION to recover of the defendant the amount of two notes executed by the Washington Planing Mills to the defendant company, and which the plaintiff alleges the defendant endorsed and guaranteed to plaintiff, who discounted the notes for defendant, and defendant checked out the money; tried before *Norwood, J.*, at

February Term, 1898, of the Superior Court of BEAU-
FORT County.

The plaintiff claims that the Eureka Lumber Com-
pany, for value, endorsed and guaranteed to plaintiff
the payment of both notes; that no part thereof has
been paid to plaintiff, but that the whole thereof is due;
that plaintiff demanded payment of said notes from de-
fendant, and payment has been refused.

The various grounds of defence are adverted to in the
opinion filed—among them, is that of payment, as to
which there was a conflict of evidence.

Judgment for plaintiffs, appeal by defendant.

*Mr. W. B. Rodman*, for defendant (appellant.)
*Mr. Chas. F. Warren*, for plaintiff.

MONTGOMERY, J : The plaintiff alleges in its com-
plaint that the defendant company *endorsed and guar-
anteed* to the plaintiff the payment of the notes sued
upon, the notes having been executed by the Washing-
ton Planing Mills to the defendant, and the counsel of
the plaintiff in the conduct of the trial and in his argu-
ment, here, treated the writing on the back of the notes
as an *endorsement* and not as a *guaranty.* The defend-
ants in their answer denied that they were either guar-
antors or endorsers of the notes, and aver that they sim-
ply sold the notes to the plaintiff. On the trial, how-
ever, the President of the defendant company as a wit-
ness for the defendants. testified in substance that the
defendants had an agreement with the plaintiff by
which these notes were to be discounted by the plaintiff
bank upon their endorsement by the defendants and
others, and that in pursuance of that agreement the
notes were endorsed by the defendants and discounted
by the plaintiff. So we will take it as an intended en-

dorsement and not a guaranty, thereby eliminating from the discussion the conflicting testimony of the witness as to the nature of the words on the back of the notes and as to the time when they were placed there. But the defendants insist that the endorsement was not made according to the requirements of the by-laws of defendant company and therefore created no liability against them. If it be conceded that the by-laws were not strictly followed in reference to the endorsement, yet, it appeared by the testimony of the defendant's witnesses that the money for which the notes were discounted was entered to the credit of the defendants in the plaintiff's bank and was drawn out by the defendants for their uses and purposes. The defendants will not be allowed, under such conditions, to deny that they made the endorsement.

The defendants further insist that, even if there was an endorsement by them of the notes, this action cannot be maintained, because they say that no notice of any demand upon the makers of the notes was given to the defendants before the commencement of this action. There is nothing in that contention. No such notice was necessary. The endorsement was upon a plain promissory note and rendered the defendants liable as sureties, and no demand on the maker or notice to the defendants of such demand was necessary previous to the bringing of this action. *Code*, Section 50.

Another contention of the defendants was that, as the maker of the note (Washington Planing Mills) had before the commencement of this suit confessed a judgment to the plaintiff for the amount of the notes, the notes had been on that account merged in the judgment, and they asked his Honor to instruct the jury that the notes were merged in the judgment, that they had ceased

to exist for any purpose and that the plaintiff could not maintain any action on them against the defendants. His Honor was right in refusing to give the instruction. Between the parties to an action wherein a judgment is rendered the judgment is a merger and the note or instrument sued upon is extinguished; but as to sureties or endorsers who are not parties to the judgment, there is no merger or extinguishment of the note or instrument. *Code*, Section 186; *Hicks* v. *Davis*, 68 N. C., 231.

The defendants requested the Court (No. 3) to instruct the jury "That it being admitted that C. M. Brown was president of the Washington Planing Mills, and it being further admitted that C. M. Brown is an endorser on the notes declared on and is now the holder of the judgment due James J. Fowle, and that he is the owner of a certain part of the judgment in favor of the plaintiff, and it being further admitted that the property of the Washington Planing Mills is held by George W. Kugler, in trust to sell the same and apply the proceeds to the payment of the Fowle judgment and then to other judgments *pro rata;* the Court charges you that it being admitted that this arrangement was made with the consent of the plaintiff, that the plaintiff is, as between the plaintiff and this defendant, compelled to credit the judgment notes sued on with the value of said plant, or all except the amount due to the Kugler Lumber Company under said trust, and especially to all that part which under the trust would go to C. M. Brown."

This instruction was asked as if Brown was a party to the action, but, as he was not, it could not have been properly given. However, the same question was raised by a motion made by the defendant, upon the answer, to make Brown and George W. Kugler, trustee, and the other parties mentioned in the answer parties to this ac-

Bank *v.* Lumber Co.

tion as necessary to a proper determination of the suit; and further, in the language of the motion, ''that the plaintiff be required to first proceed against the property bought by G. W. Kugler, trustee, and exhaust the same before proceeding against the defendant.'' The motion was denied and the defendant appealed. So, in discussing the. motion, the instruction will necessarily be involved.

The defendant contends, first, that the plaintiff occupies the position (he being president of the defendant company) of an officer of a corporation, who has procured for himself a preference of his own debt against the corporation over other creditors at a time when the corporation was insolvent. But such is not the fact here. Brown, though president of the company, was so far as the plaintiff is concerned only a surety. The Planing Mills was the principal debtor, and the notes were executed for a consideration which inured to the benefit of Brown's company, the Planing Mills, and not for his benefit as an individual. The defendant further contends that because Kruger bought in the real estate of the Planing Mills company at execution sale with the consent of the plaintiff in trust for the benefit of all the execution creditors, including the plaintiff and the defendant, to be sold by the trustee and the proceeds applied among the execution creditors, and the property not yet having been sold out being still in the hands of the trustee, that he is in equity entitled to have Brown made a party in order that he may apply his part of the money arising from the sale of the property by Kugler, to the payment of the notes sued on, because, as he alleges, Brown was a prior endorser on the notes. If there was any equity upon the above statement which the defendant could invoke out of the facts in this case

to aid him in carrying out his demand, Brown would be a proper party. But we see nothing in the case but a plain legal arrangement among execution creditors to prevent a sacrifice at execution sale of property in which they were all interested. The execution debtor, the Washington Planing Mills, so far as we see from the record, has no longer any interest in the controversy as to the property in the hands of Kugler. And the only interest the defendant has in the trust property is the right to compel the trustee, Kugler, to sell it and out of the proceeds to pay him his proper share.

As to whether or not Brown is a prior endorser of the notes sued on, that question it can raise in the execution of the trust by Kugler, or in an action between it and Brown; and it will not be allowed to obstruct and delay the plaintiff in the collection of whatever amount is due upon the notes. The defendant was an endorser, and made by our statute a surety, and the plaintiff had a right to sue the defendant alone, as he did.

We have thought it best to discuss the case at length because most of these matters involved the right of the plaintiff to make any recovery on the endorsement of those notes under any circumstances; but at the same time, because of the erroneous instruction given by his Honor, which was in these words, ''If you believe the evidence in this case you should answer both issues 'yes' and fix the amount of the recovery at the face of the notes, allowing interest from the day that each note respectively fell due,'' there must be a new trial. The instruction was erroneous because the testimony was conflicting as to what amounts the plaintiff bank had in its possession in the way of cash and collateral securities belonging to The Washington Planing Mills after the

notes fell due and before the appointment of a receiver for the planing mills.

It is not necessary to notice the objections to the evidence from the view which we take of the case.

New trial.