GEORGE WILLIAMSON SMITH v. A. J. HOLMES AND OTHERS.

(Filed 23 December, 1914.)

**1. Trials—Instructions—Directing Verdict—Evidence, How Construed.**

  A requested instruction of a party that the judge charge the jury to answer the issues in his favor if they believe the evidence, is equivalent to a demurrer or a motion to nonsuit; and in such instances the evidence should be most strongly construed in favor of the adverse party, and all facts which it reasonably tends to prove for him must be considered as established, the evidence which tends to disprove them being taken as true.

**2. Same—Conflicting Evidence—Timber Contract—Breach—Measure of Damages.**

  In this action to recover damages for a breach of contract of defendant to cut timber from plaintiff's land at a certain price, the plaintiff excepted and appealed from the refusal of the trial judge to give certain of his prayers for instruction directing a verdict in a certain sum upon the issue as to the measure of damages, evidently based upon the theory that under the terms and conditions of the contract he should be permitted to recover damages for all the timber upon the entire tract of land which should have been cut by the defendant within the time specified. There was evidence in defendant's behalf tending to show that the plaintiff entered upon the land, stopped the defendant from cutting the timber, and sold it to another party, with further conflicting evidence as to the amount of timber actually cut, etc., and it is *Held*, that the plaintiff's requested prayers were properly refused, and that the case was properly left to the jury. The charge of the court is approved.

APPEAL by plaintiff from *Carter, J.,* at May Term, 1914, of JACKSON. Civil action, tried upon these issues:

1. Did the defendants breach their contract with the plaintiffs, as alleged in the complaint? Answer: "Yes."

2. What damage, if any, is the plaintiff entitled to recover? Answer: "One cent."

3. Is the plaintiff indebted to the defendants on their counterclaim? Answer: "No."

4. If the plaintiff be so indebted, in what amount? Answer: "Nothing."

From the judgment rendered, the plaintiff appealed.

*Bourne, Parker, and Morrison for plaintiff.*
*Coleman C. Cowan for defendant.*

BROWN, J. This is a civil action, brought by the plaintiff against the defendants, for damages for breach of contract for the purchase and removal of timber belonging to the plaintiff from a certain boundary of land described in said contract. The defendants answered and denied that the terms of the contract were as set out in the complaint, but it is admitted that they entered into a contract with S. Montgomery Smith, brother of the plaintiff, whereby said defendants took over and assumed the performance of a contract that said S. Montgomery Smith had previously entered into with the plaintiff, George Williamson Smith, for the purchase and removal of timber belonging to the latter. They set up, however, that they were induced to enter into this contract with S. Montgomery Smith by his numerous false and fraudulent representations, both as to the quantity of timber on the lands described in said contract and as to the facilities for the removal of said timber. They also set up a counterclaim against the plaintiff, whose agent they claim said S. Montgomery Smith was in making said representations, and demanded an affirmative judgment against said plaintiff for a large sum of money as damages resulting from said representations.

As the plaintiff, under the rulings of the court, obtained a verdict upon the first, third, and fourth issues, and the defendant did not appeal, the only assignments of error necessarily relate to the second issue, as to damage.

The plaintiff requested the court to charge as follows:

1. "Upon all the evidence in this case, the court charges you that you will answer the first issue 'Yes' and the second '$3,500, together with interest on said sum from 17 July, 1905.'"

2. "The court charges you that the defendants, under the contract sued on, agreed to pay the plaintiff at the rate of $4 per thousand feet for all lumber cut and removed thereunder by 1 January, 1905, from timber on the railroad side of the boundary, and the amount so cut and removed should not be less than at the rate of 300,000 feet per month from 1 September, 1904, and in the aggregate not less than 1,000,000 feet by 1 January, 1905, and that they would resume the cutting after a suspension during the winter period not later than 15 March, 1905, and that they would cut at the rate of not less than 400,000 feet per month, valued in the contract at $4 per thousand on the railroad side of the boundary.

"The court further charges you that the letter of the defendants to the plaintiff, dated 17 July, 1905 (the authorship of which is admitted by

the defendants), constitutes a breach of the contract on the part of said defendants, and there is no evidence in the case that there was any breach thereof on the part of the plaintiff or any act or conduct on his part which would justify or excuse a breach or an abandonment thereof on the part of said defendants.

"That there is evidence, construed most liberally and favorably for the defendants, tending to show that the date for the settlement for the stumpage by them was extended by the plaintiff to 1 July, 1905, but there is no evidence even tending to show any other alteration or modification of the contract; and the court charges the jury that, according to this agreement, there was due, on 15 July, 1905, to the plaintiff by the defendants under all the evidence in this case the sum of $10,400, less the amount of any payments which had been made on said indebtedness by the defendants. That the only payments or credits claimed by the defendants is the sum of $2,100, and this is admitted by the plaintiff to have been made by the defendants and the Spruce Lumber Company.

"It follows that the amount due on 1 July, 1905, under the terms of this contract, according to all the evidence, was $8,300, and the plaintiff would be entitled to recover that sum in this action, but for the fact that he only asks for $3,500 in his complaint, and he is limited in his recovery to the amount so demanded.

"Therefore, the court charges you that the plaintiff, under all the evidence in this case, is entitled to recover the sum of $3,500, with interest on said sum at the rate of 6 per cent per annum from 17 July, 1905, and you should answer the first issue 'Yes' and the second issue '$3,500, with interest, as stated,' and you should not consider the other issues."

His Honor refused to give the above instructions, and such refusal constitutes the only assignment of error in the record.

His Honor charged as follows:

"The law implies nominal damages from the mere breach of a contract. By nominal damages is meant 1 cent, or 5 cents, or 10 cents, or other such trifling and inconsiderable sum; and the court instructs you that if you answer the first issue 'Yes,' you cannot as a matter of law avoid awarding the plaintiff at least nominal damages under the second issue. Beyond that, the plaintiff would, in such state of the case, be entitled, as of right, to recover such substantial damages as he may have proven to your satisfaction, by the greater weight of the evidence, under the rule of damages which I shall state to you.

"The only aspect of substantial damages which you are entitled to consider in this case is that arising upon the plaintiff's allegation that the defendants took off stumpage in excess of the amount paid for by them at the rate of $4 a thousand feet. Now, there is no controversy about

the amount of money which the defendants have paid upon stumpage account. It is agreed that that amount is $2,100. At the contract rate, $2,100 would be for 525,000 feet of stumpage.

"Now, if this evidence satisfied you by its greater weight that the defendants took off that boundary more than 525,000 feet of stumpage, it would be your duty to award to the plaintiff, under this second issue, compensation for the excess above 525,000 feet at the rate of $4 per thousand feet.

"The plaintiff contends that the defendants took off stumpage to the amount of 1,133,047 feet. The plaintiff relies in this calculation upon the evidence tending to show the number of trees cut and the size of the trees cut, by a count and measurement of the same, and the plaintiff further relies upon the expert testimony of the witnesses who testified to their knowledge of such matters, that the number of stumps, of the dimensions given, would yield 1,133,047 feet."

His Honor then proceeds to state the evidence of both parties claimed to sustain their contentions.

By this instruction his Honor confined the damages to the contract price for the timber actually cut and removed from the land. It is plain that there was such a conflict of evidence as to the quantity of timber cut and removed from the land that his Honor could not with propriety give the plaintiff's prayers for instruction, and it is to be noted that there is no exception to any part of the charge as given.

Where a party requests the court to charge the jury that if they believe the evidence they should answer the issues in his favor, the adverse party is entitled to have the evidence construed most strongly in his favor, and all facts which it reasonably tends to prove for him must be considered established, and any part of the evidence which tends to disprove the contention must be taken as true, as in case of a demurrer to evidence or motion to nonsuit; and where the evidence on the issue is not all one way, the instruction is not a proper one. *Board of Education v. Makely,* 139 N. C., 31 (38); *Cox v. R. R.,* 123 N. C., 604 (607).

The plaintiff contends that his Honor erred in confining the damages to the contract price of the timber taken from the land. The calculations embodied in the prayer for instruction are evidently based on the theory that the plaintiff is entitled, not only to the value of the timber actually cut, but also to the contract stumpage price for such as could have been cut and removed during the period of the contract.

There is evidence tending to prove that the defendants had an option given them by the plaintiff prior to 17 July, whereby defendants were given the right to pay $16,000 in cash prior to 1 October, 1905, as a minimum in lieu of stumpage; that the defendants were continuing their operations upon the property under an agreement with the plaintiff, set

out in the evidence, up to the latter part of July, when the plaintiff entered upon the land and stopped them; that after that the defendants cut and removed no more timber, sawing up only such as had already been cut. There is also evidence that the plaintiff, through S. Montgomery Smith, was at the time negotiating a sale of said lands to the Champion Fiber Company, and in May, 1905, had one of said company's men upon the land, inspecting the timber, and soon after the defendants were forced to quit, and after they surrendered possession of said property and removed therefrom the plaintiff sold the said timber to the Champion Fiber Company, and the Champion Fiber Company entered into the possession thereof and cut and removed the same.

If this evidence introduced by the defendant is taken to be true, it is plain that the plaintiff could not recover for the timber that remained uncut and standing on the land. Therefore, his Honor could not properly give the peremptory instructions requested by the plaintiff. *Rickert v. R. R.*, 123 N. C., 255; *Bank v. Lumber Co.*, 123 N. C., 24.

We have carefully examined the charge of the court, and find it to be a clear and accurate presentation of the case to the jury.

No error.