NOTE—See 28 Cyc. 679.

---

## THE FARMERS STATE BANK vs. HAUN, ET AL.

Same v. State, et al.; Same v. Waltz, et al.; Same v. Addison, et al.; Same v. Lichtenwald, et al.; Same v. Wilk, et al.; Same v. Longern, et al.; Same v. Chisam, et al.; Same v. Gordon, et al.; Same v. Delfelder, et al.

(Nos. 1148, 1149, 1150, 1151, 1152, 1153, 1154, 1155, 1156, 1157; January 8th, 1924; 222 Pac. 45.)

PLEADINGS—NEGOTIABLE INSTRUMENTS—ALLEGATIONS OF TITLE AND AMOUNT DUE ON NOTE—ATTORNEY FEES RECOVERABLE—DEPARTURE —INDORSEMENT OF NOTE BY CORPORATION—RATIFICATION—ULTRA VIRES—WORDS AND PHRASES—"CORPORATE RIGHTS" DEFINED— CONTRACTS—CONSIDERATION—BANKS AND BANKING—PRINCIPAL AND AGENT—OFFICERS AUTHORITY—DIRECTORS—KNOWLEDGE IMPUTED TO PRINCIPAL—CORPORATE ENTITY—CORPORATIONS CONTROLLED BY ONE INTEREST—FAIRNESS OF TRANSACTIONS BETWEEN—INDORSEMENTS OF NEGOTIABLE PAPER—ARTICLES OF INCORPORATION—BY-LAWS—GUARANTY—EVIDENCE OF FRAUD—WITNESS.

1. A petition alleging that a note set out therein was made, executed and delivered to one who endorsed and delivered it to plaintiff before maturity by indorsement on the back thereof is sufficient to show title in plaintiff.

2. Allegations of certain payments and that no other payments had been made on the debt evidenced by a note sued upon and stating that the balance thereof with interest and collection charges were unpaid, are sufficient to show the amount due on the note.

3. The overruling of a demurrer to a petition, alleging that a note set out therein was executed and thereafter transferred to plaintiff, and that certain payments were made thereon, without alleging that they were the only payments made, will not be reversed where the defense relates to matters other than payment.

4. Comp. Stats. 1920, Section 5148, requiring discount paper to bear endorsement directing payment to transferee, will not defeat recovery by transferee upon a note received without such endorsement, a specific penalty being provided by Section 5150 C. S.

5. A promissory note stipulating for payment of attorney fees if placed in the hands of an attorney for collection, and that all ''endorsers and each of them * * * personally charge their own separate estates for the payment thereof,'' creates a liability co-extensive with that of the principal for the payment of attorney's fees.

6. The amount of attorney's fees fixed by an instrument sued on is at least prima facia, the sum recoverable, subject to reduction where unreasonable or excessive.

7. To enable a party to recover attorney's fees, it is not necessary to show employment of counsel or that a reasonable fee was to be paid to them, where counsel appear and act as such in a case.

8. Plaintiff's petition on a promissory note alleged an indorsement thereof, by defendant, which the latter denied by answer, pleading that L. its agent had no authority to endorse on its behalf. Plaintiff's reply alleged defendants ratification of said endorsement and defendant moved to strike said reply on the ground that its allegations constituted a departure from the cause of action stated in the petition, which motion was overruled. Held, not error.

9. A provision of a corporate certificate that a particular officer shall sign the name of the corporation to instruments evidencing any obligation or indebtedness of the corporation does not prevent the directors from authorizing any other corporate officer to perform the function, especially where the said certificate delegates general powers of management to the directors, to be exercised by the adoption of by-laws, rules and regulations.

10. In order that a principal may be said to have ratified a contract made by an agent without previous authority, it must be shown, generally speaking, that the former had full knowledge of all the material facts.

11. On an issue as to whether endorsements of commercial paper made by officers of a corporation, were authorized in the first instance or ratified thereafter, evidence of various meetings of the directorate of the corporation authorizing a general policy in its relations with a bank, of which it was the owner, held sufficient to show knowledge and ratification of said endorsements.

12. In showing knowledge requisite for such ratification, the fact that a director, appointed only as a matter of formality and not expected to attend any of the meetings of the Board, knew nothing about the business of the corporation, held under the circumstances to be immaterial.

13. While two corporations, separately organized, though with the same officers and directors will not ordinarily or lightly be regarded other than as distinct entities, with power to contract with each other, subject to the rule that the transactions between them must be fair, it is also well settled that courts will look beyond mere forms and corporate entities, when necessary to preserve rights or promote justice.

14. Finding that a corporation, through its directors, knew of the existence of indorsements in its name, through its secretary and manager, of notes held by a bank, the stock of which was owned by the bank, held supported by the evidence.

15. The consideration for a contract, or a ratification, resulting therefrom, of an indorsement of notes, may be paid by another than the third party or person who is to benefit therefrom.

16. The ratification by a corporation of its indorsement through its manager, of notes owned by a bank, all of the stock of which the corporation owned, resulting from the corporation's selling the stock and assets of the bank, held limited by the contract of sale containing an express guaranty of part only of the notes.

17. The rule that a ratification follows retention of benefits received does not apply where a return is impossible.

18. Formal action is not always essential to show express authority of an agent to act for a corporation, but such authority may be implied from a course of conduct, during which the principal, including a Board of Directors, habitually permits the agent to act.

19. Where a person occupies a dominant position in two corporations, the law imposes on him the obligation to see that both corporations are treated fairly.

20. The party who would sustain a contract between two corporations, in both of which the same person occupies a dominant position, has the burden of showing it to be fair; at least where, after the contract was made by such dominant person, he became a part owner in the corporation insisting on the contract.

21. Where L., president and manager of the business of a bank, and manager of a corporation which owned the stock of the bank, made loans to third persons from the funds of the bank, and on the notes received therefor placed the corporation's indorsement, its liability thereon to the bank is to be determined under the rule requiring fairness in contracts between corporations having a common manager; depending largely on whether the loans were made for the corporation's benefit, which they might be, though not turning out to its profit.

22. Finding that L., manager of a corporation, who was also president of a bank owned by the corporation, was authorized by the corporation to make loans to finance the tenants of the corporation's farm, and to do so through the bank, held sustained by the evidence in an action by the bank against the corporation on its indorsement, placed by L. on notes received by the bank for loans to third persons.

23. In the authority given by a corporation to L., its manager, who was also the president of a bank owned by the corporation to make loans, through the bank, to the farm tenants, of the corporation, for its benefit, is necessarily implied power to carry out the rule of fairness, and so to guarantee payment of the loans and place the corporation's indorsement on the notes received by the bank for the loans.

24. Relative to whether a loan from the funds of a bank was to or for the benefit of the corporation owning the bank, the corporation is charged with knowledge of the circumstances acquired by its manager, who was also president of the bank, while acting in the scope of his authority.

25. If a loan made to a third person from the funds of a bank was of no benefit to the corporation owning the stock of the bank, as a distinct corporate entity, separate and apart from the benefit arising from its ownership of such stock, it should not be held liable to the bank on its indorsement on the note received for the loan, placed thereon without express authority, by its manager, who was also president and manager of the bank.

26. Whether a loan of money of a bank was made by it, or by or for the benefit of a corporation owning the stock of the bank, the liability of the corporation to the bank on indorsement of the corporation placed by the manager on the note received for the loan, is to be determined, aside from direct evidence, from the relations of the bank and corporation to the borrower and maker of the note, the security and other circumstances; that is, is it likely that the bank, if not under the corporation's control, would have made the loan without such indorsement?

27. As between a bank and a corporation owning the stock of the bank and having the same manager, there was consideration for the corporation's indorsement of the notes of the bank received by it for loans of its money to third persons, where the loans were in fact made by the corporation, or for its benefit.

28. To test credibility of a witness for plaintiff bank, as to transactions when its stock was owned by defendant, and witness was manager of it and of defendant, evidence that, before defendant sold the stock to N., witness had agreed with N. to buy part of it of N., as he afterwards did, is admissible.

*W. C. Mentzer, Brome & Hyde* for appellant.

In each of the cases a demurrer was filed by Investors Guaranty Corporation on the ground that no cause of action was stated and improper joinder of defendant. The first ground, however, applied to only two of the causes of action upon which judgment has been entered. The overruling of the demurrers was error; the alleged guaranty of the corporation placed on each of the notes was unauthorized and void. The court erred in refusing to strike the alleged contract of guaranty from plaintiff's amended reply on the ground that it was a departure of the case alleged in its petition. 13 C. J. 755; Clemmons v. McGeer, 115 Pac. 1081; Savage v. Aiken 21 Neb. 605; Durbin v. Fisk, 16 O. St. 533, Kimberlin v. Carter 49 Ind. 111, Estes v. Farnham, 11 Minn. 423. A reply cannot present a new issue. Moots v. Cope, 126 S. W. 184; Silver Bow County v. Davies, 40 Mont. 418. The Court erred in overruling appellant's motion to dissolve the attachments issued in each of the cases; the Court erred in its findings in each of the cases that appel-

lant was chargeable as a guarantor of the notes in suit. These errors are set forth in assignments numbered 7 to 26 inclusive; Appellant Guaranty Co., denies that it was made liable as a guarantor of the notes in suit or that there was any authority for indorsing its guaranty thereon; said guaranty is not binding even in the hands of a bona fide purchaser. 3 Fletcher 1935. Persons dealing with a corporation must take notice of its powers as imposed by its charter. 14 C. J. 348, 362, 435, 436. This defense is not barred by the principle of estoppel, for the reason that the bank was not misled, and had full knowledge that the attempted guaranty was *ultra vires*. 10 Cyc. 1162; Mooney vs. Mooney, 128 Pac. 225; Blood v. Marcose, (Cal.) 99 A. D. 435; Buena Vista O. C. Co. v. Park Bank (Cal.) 180 Pac. 12; Black v. Bank (Md.) 54 A. 88; Davis v. Rockingham Ins. Co. (Va.) 15 S. E. 54; Palo Alto M. B. & L. Co. v. Bank, 164 Pac. 1124; Nat. Bank v. Puget Sound Co., 112 Pac. 265. The directors meeting was not properly called and some of the directors were interested and therefore disqualified to act or vote authority for the alleged guaranty, 3 Fletcher 1868, 1889. Appellant could not hold stock of the bank, 5056 Comp. Stats., 26 Cyc. 899. The title to corporate assets is in the corporation and not in the stockholders. Peoples Bank v. Board of Com'rs. 104 Pac. 55; Gibbons v. Mahon, 136 U. S. 577; Van Allen v. Nolan, 70 U. S. 573; Tenn v. Whitworth, 117 U. S. 129; New Orleans v. Houston, 119 U. S. 265. Luikart as Secretary of the Guaranty Co. would have no different authority or control of the bank's assets, if the Investors owned all of the bank shares, than if it owned but one share. Mr. Luikart as Secretary of the Investors, could not lawfully agree with himself as President of the bank that the Investors Co. would, without consideration, guarantee the payment of commercial paper of the bank; an accommodated party has no right to sue the accommodation party, 8 C. J. 259; Bank v. Duncan, 141 Fed. 926-8; Williams v. Hasshagen, (Cal.) 137 Pac. 9; Green v. McCord, 85 So. 750. Lack of consideration may

be shown as between the accommodating and accommodated parties. Lackawanna Trust Co. v. Carlucci, (Pa.) 107 Atl. 693. Want of consideration, and that paper was given for accommodation may be shown by parol, Bank v. Dorvall, 98 Atl. 476; Long v. Todd, (Mo.) 226 S. W. 262; Bank v. Freeman, 98 S. E. 558; Syllabus State Bank v. Pangerl, 165 N. W. 479. The indorsement of negotiable paper by a corporation without consideration, and for money accommodation is *ultra vires* and void, 14a C. J. 738. A note held by a State Bank is void, unless made payable by its terms or indorsement to the bank, 5148 C. S., Vannatta v. Bank, 9 O. St. 27-34. The finding of the court that plaintiff was entitled to recover a 10 per cent collection fee, is unsupported by evidence. Porter v. Monarch, 17 Id. 364, 106 Pac. 299, 27 L. R. A. (NS) 111; McAllister's App. 59 P. A. 204; Broadhurst v. Brumback, 16 Pac. 555. An indorser is not liable for attorney fees stipulated on the face of the note. Robinson v. Aird, (Fla.) 29 So. 633. The facts in the Delfelder case in some respects are unlike the other cases. The Appellant received no consideration and Mr. Kingery had no authority to bind it by guaranty of payment of said notes. The judgment of the trial court should have been for defendants.

*A. C. Allen* and *O. N. Gibson* for Respondent.

·An allegation that the payee of a note endorsed and delivered it to plaintiff, sufficiently alleges ownership in plaintiff. 8 C. J. 887; Pryce v. Jordan (Cal.) 11 Pac. 185; Curtin v. Kowalsky, (Cal.) 78 Pac. 962; Stamper v. Gay, 3 Wyo. 321; Higgins v. Bullock, 66 Ill. 37 l. c. 39. Allegations of fact from which an indebtedness from defendant to plaintiff can be inferred, sufficiently shows non-payment. 8 C. J. 883, 1056; Howard v. Richards 2 Nev. 128, l. c. 132, 90 Am. D. 520, 8 C. J. 884n; Davison v. Bighorn Lumber Co., 14 Wyo. 422. An error in sustaining or overruling a demurrer, is harmless if substantial rights of objecting party are not affected. 4 C. J. 930; 4 C. J. 935 and numerous cases there cited; Stephensville R. R. Co., v. Wheat

(Tex. Civ. App.) 173 S. W. 974; Stein v. United R. Cos. Co., 159 Cal. 368, 113 Pac. 663; Peterson v. Mineral King Fruit Co., 140 Cal. 624, 74 Pac. 162; Contreras v. Merck, 134 Cal. 211, 63 Pac. 336; Young v. Benton, 21 Cal. App. 332, 131 Pac. 1051; 4 C. J. 936; Dunlap v. Broils (Tex. Civ. App.) 141 S. W. 289; First Nat. Bank v. Stephens, 157 Ky. 663, 163 S. W. 1097.  Averments of a reply avoiding any matter in the answer even though not supporting the petition if not inconsistent therewith, are not a departure.  31 Cyc. 256 and numerous cases cited; 31 Cyc. 259 and cases cited; 13 C. J. 914; Rainsford v. Massengale, 5 Wyo. 6; Home State Bank v. School Dist. (Kans.) 169 Pac. 202; Sturgeon v. Culver (Kan.) 124 Pac. 419; Hunter Milling Co. v. Allen 74 Kan. 679, 88 Pac. 252, 8 L. R. A. (NS) 291; 21 R. C. L. Sec. 116.  Guaranty contracts by appellant under circumstances disclosed by the evidence were not *ultra vires.*  Sec. 3962, Comp. Stats. of Wyo. 1920; Reed v. First Nat. Bank of Pueblo; 48 Pac. 509; 8 C. J. 255; 2 Fletch. Cyc. 1873, 1975; Wood Lub. Co. v. Moore (Cal.) 191 Pac. 905, 11 A. L. R. 549, 554, and annotations.  Notwithstanding provisions of appellant's charter, respondent is not precluded from recovery, because the contracts were not signed by the president and attested by the corporate seal, 10 C. J. 1255; 14a C. J. 269, Sec. 2118, 2120; 3 Fletch. Cyc. 2441, citing; Carey v. McDougland, 7 Ga. 84; Mechanics' Bank of Alexandria v. Bank of Columbia, 5 Wheat. (U. S.), 326, 5 L. ed. 100; Merchants' Bank of Macon v. Central Bank, 1 Ga. 418, 44 Am. Dec. 665; Rockwell v. Elkhorn Bank, 13 Wis. 653; 3 Fletch. Cyc. 2441, 2442 and other cases cited; 2 Fletch Cyc. 2445.  The form of the indorsement did not invalidate the notes, Sec. 5148 C. S. 1920; 7 C. J. 713; 3 Fletch. Cyc. 2441, 2442, 2445.  The guaranties were supported by ample consideration; a note or endorsement by a stockholder for the purpose of preventing a depletion of bank's assets, is supported by a sufficient consideration and enforceable, 28 C. J. 915, 920, 921; Sections 3957 and 3958 C. S; 8 C. J. 236; Union Bank v. Sullivan,

214 N. W. 332, 108 N. E. 558; Sickles v. Harold, 11 Misc. 583, 32 N. Y. Supp. 488; State Bank v. Kirch, 26 Pa. 452, 65 Atl. 932; Dykeman v. Keeney, 10 App. Div. 610, 42 N. Y. Supp. 488; Utah Nat. Bank v. Nelson, 38 Utah 168, 111 Pac. 907; Best v. Thiel, 79 N. Y. 15; Skordal v. Stanton, 89 Minn. 511, 95 N. W. 449; State ex rel. v. Hills (Ohio) 115 N. E. 1015, L. R. A. 1917B 684; Bank v. Doyle (Cal. App.) 203 Pac. 780. While an agent or officer cannot represent conflicting interests, the rule does not apply if there be no conflict, when both interests understand and consent thereto, 2 C. J. 712, 713; contracts between corporations having the same officers and directorate, while voidable, may be ratified and made binding 14a C. J. 125, 365; Smith v. Stone 21 Wyo. 62. The guaranties were ratified, where the general manager of a corporation, without authority executes guaranties of payment and the corporation knowingly receives a consideration therefor, the retention of the consideration is a ratification of the guaranty, Armour & Co. v. R. Rosenberg & Sons, Co., 36 Cal. App. 773, 173 Pac. 404; Cudahy Pac. Co. v. R. Rosenberg & Sons Co., 36 Ca. App. 818, 173 Pac. 406; Lake Street Elev. R. Co. v. Carmichael 82 Ill. App. 344; 184 Ill. 348, 56 N. E. 372; Hunt v. Northwestern Mortg. Trust Co., 16 S. D. 241, 92 N. W. 23; Curtis v. Natalie Anthracite Coal Co., 89 App. Div. 61, 85 N. Y. Supp. 413, 181 N. Y. 534, 73 N. E. 1122; Higgins v. Frank, 4 Wyo. 502. Allegations of indorsement and transfer are sufficient to show plaintiff's title, 18 C. J. 887; Stamper v. Gay, 3 Wyo. 321; Higgins v. Bullock, 66 Ill. 37. Alleged ownership is presumed to continue, Curtin v. Kowalsky 78 Pac. 962. Non-payment is sufficiently alleged, 8 C. J. 883, 22 C. J. 90; Lawson's Pre. Ev. 210; Sullivan v. Shea, 162 Pac. 925; Murt v. Lemon, 75 Pac. 160; Love v. Edmonston, 27 N. E. 354; Diel v. Stagner, 56 Mo. 353. Non-payment is presumed from possession, Howard v. Richards, 2 Nev. 128, 132, 90 Am. Dec. 520. Introducing instrument in evidence creates *prima facie* case of non-payment, 8 C. J. 1056. Payment is an affirmative defense, Id. Ruling on demurrer is

harmless where substantial rights not affected, 4 C. J. 930; Davis v. B. H. L. Co., 14 Wyo. 522. Allegations of reply not inconsistent with petition are not a departure, 31 Cyc. 256; 13 C. J. 747. Ratification need not be specially pleaded, 2 C. J. 914; Bank v. School Dist. 169 Pac. 202; Rainsford v. Messengale, 5 Wyo. 6. An accommodation indorser is defined by statute 3962 C. S. A consideration accruing, the fact that it fails does not make the paper accommodation paper, 8 C. J. 255; Reed v. Bank 48 Pac. 509. A guaranty by a corporation of obligation connected with its business is not *ultra vires,* 2 Fletch Cyc. 1873-1875. Strict construction of corporate charter is not applied to evade liability by narrow meaning of words, 14a C. J. 264-268. Maxim of *ejusdem generis* applies 19 C. J. 1255, 14a C. J. 269; Charter provisions relating to contract limitations may be directory, 3 Fletch Cyc. 2441-45; 5148 C. S. was not intended to defeat collection of notes by transferee, 7 C. J. 713, and cases there cited; 3 Fletch Cyc. 2445; 14a C. J. 269, Sec. 2120. The Guaranties were supported by sufficient consideration 28 C. J. 915, 921, 3957 C. S. 3958 C. S. an extension of time is valid consideration, 8 C. J. 326. Third persons may rely on authority of joint agent, 14a C. J. 365.

*W. C. Mentzer, Brome & Hyde* in Reply.

A corporation is an entity irrespective of stock ownership Cook's Vol. 1 Par. 6; Ex parte Fisher, 20 S. C. 129; Pittsburgh Co. v. Duncan, 232 Fed. 584; title of corporate assets is in the corporation and not in stockholders, Bank v. Comr's., 103 Pac. 682, 104 Pac. 55; Bank v. Johnson Co., 159 N. W. 279. Unauthorized indorsements by agent of a corporation are not binding, even in the hands of a bona fide purchaser for value. 3 Fletch 1539, 1894; Bohm. v. Co., 9 N. Y. S. 514; charter limitations are binding on third persons, 14 C. J. 348; 14a C. J. 2251; burden of proof is on holder of guaranty, Bank v. Company, 81 Atl. 773; corporate charters are contracts between the corporation its stockholders, and the state, 14 C. J. 162; Gary v. Company 91 Pac. 369; Bylaws contrary to charters are *ultra vires,* 14

C. J. 362. Corporations are not empowered to execute accommodation paper, 2 Fletch 957, 9 L. R. A. (NS) 1046. Ratification by a corporation cannot be inferred from its officers' mere knowledge; *ultra vires* acts may be ratified where benefits are retained and stockholders consent, 14a C. J. 604, Sec. 2164; a corporation is not estopped from pleading invalidity of contract, Id. Exceptions are noted in the case of bona fides, Hackensack Wat. Co. v. DeKay, 36 N. J. Eq. 548-565; the execution of contracts in violation of charters or by-laws constitutes a defense, In re Cracker Co., 161 Pa. 157. There can be no ratification of *ultra vires* acts without consent of stockholders, 14a C. J. 316, 329, and cases in notes. The indorsements in this case are invalid because of dual capacity of the agent negotiating them, Matheison v. Arnold, 280 Fed. 132; City Trust Co. v. Loan Co. 167 N. W. 785; Bentley v. Zelma Co., 184 Pac. 131.

Blume, Justice.

The Farmers State Bank of Riverton, as plaintiff, commenced an action against Jacob Haun and the Investors Guaranty Corporation, as defendants, on certain promissory notes made by said Jacob Haun and endorsed by said Investors Guaranty Corporation. Nine similar suits were commenced, in each of which the said Investors Guaranty Corporation was sought to be held as endorser and in which another, the principal maker of the note, was also made defendant. Nine of these cases were tried together in the district court. The case against the Investors Guaranty Corporation and Evelyn M. Delfelder, Executrix, was tried separately. In each of the cases judgment was rendered for the plaintiff bank, and in each of them the Investors Guaranty Corporation has appealed and that corporation will hereafter be referred to as the appellant. All of these ten suits, involving as they do some of the same questions, have been submitted together in this court, and all of them will be most conveniently disposed of by this one opinion, although some of the points discussed herein relate to only

a part of them.   The evidence in the cases shows or tends to show the following facts:

The appellant is a Utah corporation.   Its articles of incorporation were filed September 4, 1917, although the preliminary agreement for the organization was made at Omaha, March 20, 1917.   It has a board of seven directors.   Jesse C. McNish was its president from the time of its organization until the month of June, 1921, at which time he was succeeded by H. W. Kingery, then vice-president and director of the appellant.   E. H. Luikart was secretary of the corporation from the time of its organization until about September 1st, 1921.   One of the directors lived at Salt Lake City; he never attended any of the meetings of the board, and apparently was not expected to do so.   The board of directors was authorized to meet at Salt Lake City, Riverton or Omaha, but meetings were only held at the two latter places.   Some of the directors of the appellant were also at the same time directors of the respondent bank.   The powers of the appellant were that of an investment company, and as such it had authority to own, manage and handle real estate and various kinds of personal property, such as notes, mortgages, bonds and similar property; to own and manage irrigation works, and also to acquire and own stock in other corporations, including banks.   Pursuant to its power to acquire the stock in banks—the legality or propriety of which does not enter into these cases— appellant at various times owned stock in the respondent bank herein, in the Farmers State Bank at Worland, in a bank at Powell and in one at Chadron, Nebraska.   The respondent bank herein was organized by various incorporators, through the instigation of the incorporators of the appellant, on March 26, 1917, and according to Luikart's testimony, was organized and the stock therein subsequently acquired, for the purpose of financing the tenants and farm interests of the appellant.   In any event all of the stock of the respondent bank was subsequently acquired by the appellant, the exact time of which does not appear, but as

early as June 9, 1917, all of the stock in the bank had passed
into the hands of stock holders of appellant; on July 10,
1918, about one-half of the stock was owned by appellant,
and all of it appears in the monthly balance sheets of appel-
lant, as its property, from July, 1919 to May 31, 1921.
Commencing, probably, sometime in 1917, appellant began
to acquire considerable number of farms in the country
round Riverton, all of which appears to have been bought
through Luikart for a consideration of approximately a
quarter million dollars. Just what were Luikart's activi-
ties in connection with the appellant or the respondent bank
in 1917 or 1918 does not clearly appear, although it would
seem that during that time he was not in any way connect-
ed with the bank. But on January 15, 1919, he was ap-
pointed manager of the property of the appellant at River-
ton. It is doubtful whether the meeting of the board of
directors of appellant, held on that day and at which he
was appointed, was a legal one, but he moved to Riverton,
became actual manager of the property of appellant at Riv-
erton, as well as president of the bank, and from that time
on until about June, 1921, was substantially in sole manage-
ment and control of appellant's property at that place. Ac-
cordingly, considering that the appellant was sole owner
of the bank, Luikart treated the two corporations as sub-
stantially one institution, except that the books of the two
corporations were kept separately. The loans made to var-
ious parties were seemingly taken indiscriminately in either
the name of the bank or the appellant and whether taken
in the name of one or the other were always, or at least
usually, so Luikart testified, endorsed by him for the ap-
pellant and used for the purpose of rediscounting the notes
at various other banks, principally at Cheyenne and Oma-
ha, all with the knowledge, as testified to by Luikart, of the
directors of appellant and at least most of its shareholders.
This knowledge, however, is not conceded by appellant, and
much evidence was introduced by it to show the absence
thereof. Luikart, with some assistance, looked after the

farms owned by appellant, secured tenants, some of them brought from Colorado as colonists, financed these tenants in many instances, making the loans from the money of the bank, and, it would seem, taking the notes at first in the name of the bank, endorsed by appellant, but later taking them, or the renewals, generally in the name of appellant, endorsed by the latter.

Under the terms of the notes and endorsements the endorser guaranteed the payment of the notes, waiving all demand for payment, etc. Some time early in the year 1921 some thought was given to the sale of the bank. Appellant had already disposed of its banks at Powell and Chadron, and early in June, 1921, negotiations were commenced with Oscar Nicholson for the sale of the respondent bank to him. The directors and stockholders of appellant met at Riverton, a committee was appointed to go over the affairs of the bank and determine the value of the stock, and on June 9, 1921, the appellant entered into a contract with Oscar Nicholson selling him all of the bank stock for $5000 and certain stock in the appellant corporation, and in turn appellant guaranteed the payment of certain notes of the bank amounting to $93,898.19, according to a list in an attached schedule B, which includes most, but not all, of the notes involved in these actions. The contract also provided that the appellant should, on request, help renew these notes from time to time and endorse them, should that be required for the purpose of rediscounting these notes. A few of these notes, were renewed and the renewals endorsed by appellant. A few of the others were taken up or paid off by appellant. The suits here were commenced early in March, 1922, in each case making appellant, as endorser, and the principal maker of the respective notes parties defendants, the respondent bank seeking to hold the appellant liable as endorser. The appellant claims that these endorsements were made without authority, and were without consideration and for accommodation only. The bank replied that if there was no authority for the original endorsements,

they were subsequently ratified, and claims, further, that the appellant has received and retains the benefit of the endorsements, and hence is liable thereon. With this general outline, we shall proceed to the consideration of the specific assignments of error and points made herein, and other facts will be stated in connection therewith.

1. Demurrers were filed in these cases on the ground that the facts stated in the respective petitions are not sufficient to constitute a cause of action. The demurrers were overruled and error thereon is assigned in two of the cases —in which Waltz and Longren were codefendants with appellant. It is urged, in the first place, that the petitions in these cases do not allege that plaintiff is the owner of the notes in question, and that such absence is fatal. The petitions allege that the notes, set out in *haec verba,* were made, executed and delivered to appellant, and that thereafter the appellant duly endorsed and delivered them to the plaintiff before maturity, by endorsement in writing upon the back of said notes. These allegations are, we think, clearly sufficient to show the title to the notes to be in plaintiff. No case has been cited to the contrary. 8 C. J. 886-890.

It is urged, in the second place, that the demurrer should have been sustained in these two cases because the petitions fail to allege that there was anything due on the notes sued on. The facts in both cases are alike in that respect. In both, the petition sets out two causes of action, each based on a separate note, and in both the first cause of action sets forth, after stating certain payments, that ''no other payments have been made on the indebtedness evidenced by said note, and the balance thereof, together with the interest and collection charges aforesaid, are unpaid.'' This would, we think, be a sufficient allegation of the non-payment of the indebtedness sued on in these causes of action. But no such allegations is contained in the second cause of action, and non-payment must be inferred, if at all, from the allegations setting forth the execution of the notes, the transfer

thereof, and that certain payments were made thereon, without, however, stating that these were the only payments made. Without deciding as to whether or not such inference of non-payment may be drawn from the remaining allegations, it appears that non-payment is not at all disputed, appellant denied that it endorsed the note or had anything to do with it whatever, the vital contentions made herein relate to matters entirely different from payment or non-payment; appellant was not at all misled by the defect complained of, and we are, therefore, unable to see how the appellant can be said to have been in any way prejudiced by the ruling of the court on the point in question, and hence we cannot reverse the case even if the ruling was erroneous. 4 C. J. 930. Yocum v. Allen, 58 O. S. 280, 50 N. E. 909; Davis v. Lumber Co., 14 Wyo. 517, 522; 85 Pac. 980.

2. The notes in suit were made payable to the appellant. The endorsement and transfer thereof does not, as we have seen, mention the name of the transferee, and it is appellant's contention that in the absence thereof, the note is void in the hands of the bank, on account of Section 5148 W. C. S. 1920, which provides as follows:

"All notes, bills and other evidence of debt, excepting bills of exchange, discounted by any banking association, shall be made by the terms thereof or by special endorsement, payable to the order of such association; and no such evidence of debt shall be assignable except for collection or for the following purposes: First—For the purpose of rediscount, as provided for in section 5143: Second, To pay liabilities of said association; and, Third—To divide among the shareholders on their stock."

The section quoted does not declare any evidence of indebtedness taken by the bank in violation of the provisions to be void. Section 5150 provides for a specific penalty, without including the provision that no recovery may be

had on such evidence of indebtedness. We do not think that public policy requires or that the legislature intended any such consequences of a violation of Section 5148, supra, as contended for by counsel for appellant. Such consequences would be to injure the interests of creditors, stockholders, and all who have an interest in the safety and prosperity of the bank. 7 C. J. 713; Gold Mining Co. v. National Bank, 96 U. S. 640; 24 L. ed 648.

3. Appellant also contends that it, as a mere endorser of the note, is not liable for the attorney's fees provided for in the note, and there are some cases holding this to be the rule in the ordinary case of endorsements. Other cases hold to the contrary. 8 C. J. 1098. In the case at bar, however, the note provides for an attorney fee of 25% in case the note is placed in the hands of an attorney for collection, and further provides that the endorsers waive presentment for payment, notice of non-payment, protest and notice of protest "and each of them hereby personally charge their own separate estate with the payment of this note and debt evidenced thereby." This substantially amounts to an express agreement of a liability on the part of the endorser, coextensive with that of the principal.

Counsel further maintain that the respondent bank, in order to recover attorney's fees, must prove not only the reasonableness of the fee but also that it agreed to pay it to counsel. Some Idaho cases cited, including Porter v. Monarch, 17 Idaho 364, 106 Pac. 299, 27 L. R. A. (N. S.) 111, appear to sustain this view. It is generally held that the amount of fees fixed by the instrument sued on is at least *prima facie* the sum recoverable, subject to be reduced, where such sum is unreasonable and excessive. 8 C. J. 1101. The proof in this case shows that ten per cent was a reasonable sum to be allowed, and this is the amount allowed herein by the court. We do not think it was necessary to introduce evidence showing the employment of counsel by respondent bank, or that a reasonable attorney fee was to be paid to them. Counsel for respondent are officers of the

court and presumably appeared in court as counsel repre-
senting their clients, and presumably their appearance and
the services rendered by them were with full authority to
do so, either under an express or implied promise to receive
reasonable compensation for such services.  Stephenson v.
Allison, 123 Ala. 439, 26 So. 290; North Atchison Bank v.
Gay, 114 Mo. 203, 21 S. W. 479; Utah National Bank v.
Nelson, 38 Utah 169, 111 Pac. 907; McCormick v. Swem,
36 Utah 6, 102 Pac. 626, 20 Ann. Cas. 1368 and cases cited.

4.  The plaintiff bank, in the petitions, alleged in general
terms the execution of the endorsements in question by ap-
pellant.  The latter, in its answer, denied that fact and
pleaded that Luikart, the agent of appellant, had no author-
ity to execute the endorsements for or on its behalf.  The
plaintiff bank, in its amended reply, pleaded in substance
that the appellant had ratified the endorsements by its gen-
eral course of conduct and by the contract made by it with
Nicholson on June 9, 1921, hereinbefore mentioned.  Appel-
lant filed a motion to strike the amended reply from the
files for the reason that the allegations therein constitute
a departure from the cause of action set forth in the peti-
tion.  The further objection was made that the Nicholson
contract is an independent transaction and contract.  The
court overruled the objection, and this, upon exception
taken, is assigned as error.  It is, of course, true that the
Nicholson contract is a separate transaction, it is not made
the basis of recovery, and could, probably, not have been
alleged as a separate cause of action in the petitions which
in each case made appellant and another as parties de-
fendants.  An independent contract by an alleged principal
with a third party not in any way connected with an agree-
ment which an alleged agent made for and on behalf of a
principal, could not in and of itself serve as a ratification of
such agreement.  Mechem, Agency (2nd Ed.) Sec. 474.
But the independent contract might, nevertheless, show
such ratification either by its contents or by these in connec-
tion with other matters, and it is claimed that such is the

case here. We shall come to that subject later. At present we must dispose of the further contention that a ratification may not be pleaded by way of reply, since such allegation continues a departure from the allegations of the petition, alleging, as stated before, in general terms the execution of a contract—here that of endorsement—by the principal. Ratification may briefly be defined as the subsequent adoption and affirmance by one person of an act which another, without authority, has previously assumed to do for him, while purporting to act as his agent. Mechem, supra, Sec. 347. It is not a form of authorization. But it relates back and is a cure for the lack of, or a substitute for, authorization. Idem, Sec. 348. The author mentioned states at section 485:

"So completely is ratification regarded as equivalent to prior authority that it is generally held not necessary to expressly plead it as such; it may be shown under the general allegation that the act was done or the contract made for the principal or by his agent, and the like."

To the same effect see 2 C. J. 906. If it is not even necessary to plead ratification, it follows as a matter of course that a reply setting it up constitutes no departure from the cause of action set up in a petition against a principal based on an act done by the agent, and it has been so held. 2 C. J. 914. It does not appear in the cases at bar that respondent bank had any reason to believe that appellant would deny the authority of its agent to make the endorsements in question on its behalf. It would, therefore, not have been reasonable to have required respondent bank to set up ratification thereof in the first place. It was soon enough to do so when the occasion seemed to require it, and whether it was necessary or not to do so, it was highly proper, informed appellant of the facts relied on, was beneficial to it, and it cannot, of course, complain thereof. Buck Creek Lumber Co. v. Nelson, 188 Ala. 243, 66 So. 476.

5.    The endorsements in question were signed on behalf of the appellant only by "E. H. Luikart, Secretary." Counsel for appellant contends that the articles of incorporation require all evidences of indebtedness of appellant, including endorsements such as are involved here, to be signed by its president as well as its secretary; that appellee bank must be charged with knowledge of that fact; and that hence the endorsements in the cases at bar, being signed only by the secretary, are invalid. Article 12 of the certificate of incorporation, relied on, provides, among other things, as follows:

"The property of the corporation may be sold, mortgaged, leased, improved, exchanged or otherwise disposed of by the board of directors, and all deeds, mortgages, leases, notes, bonds, debentures, or other instruments evidencing a sale or transfer of any interest of this corporation in and to its real estate, or evidencing any obligation or indebtedness of this corporation shall be signed by the president or one of the vice-presidents and attested by the secretary with corporate seal attached."

It will be noted that under this provision, the documents required to be signed by both the president and secretary of the corporation are, so far as material here, "mortgages, notes, bonds and debentures, and other instruments    *    *    * evidencing any obligation or indebtedness." It is contended by counsel for respondent bank that here is an enumeration of specific things, followed by a general phrase "other instruments," and that the latter, under the doctrine of *ejusdem generis* (19 C. J. 1255) must be held to refer to things of the same kind as contained in the specific enumeration, and that an endorsement is not of the same kind as the things specifically enumerated. The endorsements involved in these cases make the endorser substantially a co-maker of the note as to the holder thereof. If the foregoing provision in the certificate of incorporation entirely makes void notes of the appellant, not signed as therein required, it may be that endorsements such as were made

herein come within the spirit of the prohibition. We need
not decide the point. A full discussion of provisions for
the manner of executing corporate instruments is contained
in Fletcher, Cyc. Corporations, Sections 1449 to 1460. The
author expresses it as his opinion that, generally speaking,
mere informalities in the mode of executing a contract is
not fatal to its enforcement. It has been held that such
provision does not apply to contracts usually entered into
otherwise than in the ordinary course of business. Fletch-
er, supra, Sec. 1449. In the case of Dana & White v. The
Bank of St. Paul, 4 Minn. 385, it appears that the charter
governing the defendant bank provided: "Contracts made
by the bank or banking association established under the
provisions of this act  *  *  *  shall be signed by the
president and cashier thereof." The contract involved in
that case was not signed as the law required, and the con-
tention was made that such contract was void. But the
court held otherwise and decided that the law referred to
must be construed simply as appointing statutory agents
to contract in behalf of the bank where no designation of
such agents is made otherwise, and whose contracts, if made
within the scope of its corporate powers, would be binding,
but left the bank free to authorize contracts to be entered
into in any other manner. The case of Barnes v. Ontario
Bank, 19 N. Y. 152, is a similar case, and the holding is the
same. In the case of New England F. & M. Ins. Co. v. Rob-
inson, 25 Ind. 536, it appears that the sixth section of the
charter of the insurance company provided that "the poli-
cies and other contracts of said company  *  *  *  shall
be signed by the president and countersigned by the secre-
tary" etc. It was held that a policy of insurance, resting
in parol, was valid, notwithstanding the foregoing provi-
sions. Similar in effect is Dayton Ins. Co. v. Kelly, 24 O. S.
345, 15 A. R. 612. In the case of Buck Creek Lumber Co.
v. Nelson, 188 Ala. 243, 66 So. 476, the certificate of incor-
poration of the lumber company provided: "That no draft,
bill of exchange, check, no bond or other evidence of liabil-

ity or contract creating any liability on the part of the company shall be valid unless the same be in writing signed by the president and countersigned by the treasurer; and provided expressly that any liability otherwise created shall be null and void.'' The contract involved in that case rested in parol, and the court held that the demurrer to the answer setting up the foregoing provision in the certificate of incorporation, together with the fact that the contract sued on was in parol, was properly sustained. In the case of Blanc v. Germania Nat'l. Bank, 114 La. 739, 38 So. 537, it appears that the charter of a corporation provided that its notes should be signed by the president and countersigned by its secretary. But the court held that a note of the corporation signed by the secretary alone is valid if issued in due course of business and especially if the corporation was in the habit of disregarding that provision of its charter, the court saying in part:

''There is also a line of decisions to the effect that a note or contract which has been executed by a mercantile corporation in the manner in which it usually executes its notes or contracts, and in regular course of business will be held binding on the corporation, notwithstanding any informality in its execution resulting from non-compliance with the requirements of the charter of the corporation. Martin v. Webb, 110 U. S. 7; 3 Sup. Ct. 428; 28 L. Ed. 49; Cox v. Robinson, 82 Fed. 277; 27 C. C. A. 120; Armstrong v. Chemical Bank, 83 Fed. 556; 27 C. C. A. 601; First Nat'l. Bank v. G. V. B. Min. Co., (C. C.) 89 Fed. 439.''

In 10 Cyc. 1001, it is said:

''A provision in the governing instrument of a corporation that a particular officer shall sign the name of the corporation to particular instruments—for example to promissory notes—does not prevent the directors from authorizing any other corporate officer to perform the function.''

The text cites the case of Cameron v. First National Bank (Tex. Civ. App.) 34 S. W. 178, which holds that a violation of a provision requiring the president to sign all contracts did not invalidate a contract made by the directors, and that in fact the affixing of the president's signature would have been a mere ministerial act. In the case of First Nat'l. Bank v. G. V. B. Min. Co., 89 Fed. 439, a statute required the written assent of the holder of two-thirds of the capital stock of a corporation in order to make a mortgage valid. It was held that the statute did not need to be literally followed, since the main purpose thereof was to have the stockholders advised of the giving of a mortgage. Other cases holding that formalities in the execution of a contract may often be dispensed with are Hartzell v. Ebbvale Min. Co., 239 Pa. 602, 86 Atl. 1093, and cases there cited; First Nat'l. Bank v. Eureka Lumber Co., 123 N. C. 24, 31 S. E. 348; Starwich v. Washington Cut Glass Co., 64 Wash. 42, 116 Pac. 459; Ann. Cas. 1913 A 262; Prince of Wales L. & Educ. Assur. Co. v. Harding E. B. & E., 181, 120 Eng. Rep. 477; In Re Norwich Yarn Co., 22 Beav. 143.

It is plain from the foregoing authorities that the statement of Fletcher that informalities of execution will not ordinarily vitiate a contract, is sustained by abundant authority. Examining the provision of article 12 of the certificate of incorporation, quoted above, what was its purpose? It could not reasonably be contended that the purpose was that contracts might be made for the corporation by the president and secretary alone, in disregard of the authority of the board of directors. Plainly the intent could have been only, either to make a contract made by the president and secretary, under seal, binding without showing any authority on their part to execute it, or to make reasonable provision so that whatever contract would be made, should in fact be authorized by the board of directors.

The cases heretofore cited would seem to indicate that the former purpose should be construed to have been the one in the minds of the incorporators. This view is strength-

ened by another provision of article 12 of the certificate of incorporation not heretofore mentioned. That provision reads:

"The Board of directors shall have the power to adopt such by-laws, rules and regulations, not inconsistent with law or with the corporate rights of this corporation, as may be necessary to carry into effect the objects for which this corporation is formed."

By the phrase "corporate rights," as so used, is evidently meant "corporate powers," and does not refer to the formalities or procedure of carrying out the objects of the corporation. The foregoing provision does not make an exception as to the signature of documents, and appears to give sweeping power to the board of directors to make whatever by-laws, rules and regulations are proper to be made for the management of the corporation. This would seem to be inconsistent with the first provision of the certificate of incorporation quoted above unless that is construed as above indicated. In any event the provision of the certificate of incorporation relied on by appellant is nothing more than a by-law or rule. Buck Creek Lumber Co. v. Nelson, supra. By-laws and rules may be waived. If the right to make and alter them resides only in the shareholders, they may, probably, be waived only by the stockholders, but it may be done even in such case by non-usage by the corporate officers, continued for a sufficient length of time to bring it home to the stockholders. 3 Clark & Marshall, Private Corporations, p. 1952; 4 Id. p. 3685; Fletcher, supra., Sec. 503; Blair v. Metropolitan Savings Bank, 27 Wash. 192, 67 Pac. 609. When a board of directors has power to adopt by-laws or rules, it has power to waive those adopted. (Fletcher, supra, Sec. 503; Bank of Holly Springs v. Pinson, 58 Miss. 421, 38 Am. Rep. 330.) unless, perhaps, the certificate of incorporation limits the right. Here, the certificate of incorporation does not, as we have seen, limit the right of the board of directors in respect to the matter now considered.

The evidence in the cases at bar is clear that the requirement as to the signature on documents by the president and secretary was completely, or almost completely ignored practically from the beginning, so that it is probable that even the stockholders of appellant had knowledge thereof and acquiesced therein. In any event, the directors were fully cognizant thereof and must be held to have acquiesced therein and to have waived the requirement above mentioned.

6.    Appellant insists that, without reference to the provision of the certificate of incorporation, no authority to execute the endorsements in question was given. But before proceeding to a discussion of that question, we shall investigate whether or not all or any of these endorsements were ratified, for by doing so, the former question will be simplified. Appellant denies that any ratification was shown. In order that a principal may be said to have ratified a contract made by an agent without previous authority, it must be shown, generally speaking, that the former had full knowledge of all the material facts. Mechem, supra, Sec. 395. We shall, accordingly, examine that question first and in connection therewith point out some of the main evidence tending to show the knowledge of the directors of appellant herein, even though we may be repeating some of the facts already stated. The minutes of various meetings of the boards of directors of both companies were introduced in evidence and at some of those, at least, the business done by Luikart was discussed, and knowledge of such business was thus gained at least by the directors present. For the purpose of showing knowledge on the part of the directors so present, it was immaterial whether the meeting was a legal meeting or not. The fact that Critchlow, the resident director of appellant in Utah, was never present at these meetings and did not, in fact, know anything about the business of appellant, is not very important here. It was held in Sherman v. Fitch, 98 Mass. 59, that the absence of one director in Europe could not deprive the corporation of power to act. So in this case the appointment of Critchlow

as a director was evidently only a matter of formality. He was evidently not expected to be present at any meetings except the annual meetings held at Salt Lake City, and those meetings were evidently held at that place only because the corporation was organized under the laws of Utah. And the fact that Critchlow was never present at any of the meetings of the directors, held during a number of years, must have become fully known to all the shareholders and directors of appellant, and under the circumstances they must be held to have acquiesced in having business done without his presence or knowledge.

Luikart acted as manager of the appellant and as president of respondent bank, and as such was permitted to have substantially the sole control of the two corporations for a period of approximately two and one half years and up to the time that the appellant sold the bank. All of the stock of the bank was owned by appellant, and no one was a director of the former except those who at the same time were interested either as stockholders or directors, or both, of the appellant. Luikart testified that it was the practice and policy to have the endorsement of appellant on the notes of the bank; that "every director and practically all the stockholders knew about that." The minutes of the meeting of the bank directors, held on June 29, 1920, provided for rediscounting the notes of the bank of the American National Bank of Cheyenne in the sum of $50,000; and for the directors of the bank to guaranty these notes, "upon the agreement and understanding that any and all such paper so rediscounted or sold shall always and in each case bear the endorsement of the Investors Guaranty Corporation." These minutes are of some importance because of the ownership of the bank by appellant, and the likelihood that the directors of the appellant would examine the books of the bank. Two of the directors of the bank, Mr. Keating and Mr. Luikart, were at the time also directors of the appellant. On July 13, 1920, a meeting was held by the board of directors of appellant's company at Riverton, with

a quorum present, and a motion was passed to the effect that "its secretary, or the vice-president H. W. Kingery, be fully empowered and are hereby authorized to place the guaranty of the corporation on any and all rediscounts or notes sold by the Farmers State Bank of Worland or Riverton, Wyoming." In January, 1921, the respondent bank rediscounted notes to the amount of $50,000 with the Merchants National Bank of Omaha, said notes containing the guaranty of appellant. The Omaha bank desiring specific authority on the part of the latter, a meeting of the board of directors of the appellant was held at Riverton on January, 11, 1921, with a quorum present, and resolution was passed authorizing the secretary to make loans of $50,000, and "to make, execute and deliver a promissory note or notes or other written obligation of the corporation" therefor. Before the sale of the bank stock to Nicholson on June 9, 1921, appellant appointed a committee to go over the property of the bank and determine its value. The members of the committee, other than Luikart, deny that they saw or knew of the endorsements of the appellant on the notes in this case, claiming that Luikart, a member of the committee, held the notes in his hands without mentioning such endorsements. Nicholson testified that the endorsements were discussed. In the contract of sale to Nicholson, it is provided that Nicholson will take care of the rediscounts "by the said Investors Guaranty Corporation or any of its officers for and on behalf of said The Farmers State Bank of Riverton as per schedule attached," showing conclusively that appellant had knowledge that at least some of the notes of the bank had been endorsed by it and on its behalf.

The knowledge of the endorsements is, accordingly, shown not only by the testimony of Luikart and Nicholson directly to that effect, but the circumstances corroborate that testimony. The bank belonging to the appellant, it was reasonable for the lower court to conclude that when a special committee was appointed as above mentioned, to

determine the status of the bank's property, it did its duty, and that in so doing, it discovered, if it did not know before, the fact of the endorsements, particularly since it conclusively appears that the members of the committee as well as other directors of appellant had knowledge of the existence of at least some of the endorsements. And while ordinarily the knowledge essential for a basis of ratification must be actual, and constructive knowledge is not sufficient (Mechem, Agency, 2nd Ed. Sec. 403), yet the circumtsances may indicate actual knowledge. It is said by Mechem, supra, sections 404-405, after stating the necessity of the existence of actual knowledge:

"At the same time, however, the principal cannot be justified, in willfully closing his eyes to knowledge. He cannot remain ignorant where he can do so only through intentional obtuseness. He cannot refuse to follow leads, where his failure to do so can only be explained upon the theory, that he preferred not to know what an investigation would have disclosed  *  *  *. The facts, moreover, may be so patent that for the principal to profess ignorance would merely to stultify himself. They may be so obvious that the principal, as a reasonable man, cannot be heard to say that he was ignorant of them."

In Halsell v. First National Bank, 48 Okl. 535, 150 Pac. 489, L. R. A. 1916 B. 697, it is held that a director is chargeable with knowledge of the corporate affairs of which it is his duty to become informed. In F. M. Davis & Co. v. Porter, 248 Fed. 397, 160 C. C. A. 407 it is held that directors must be held to have knowledge of facts which they could by slight diligence have ascertained. The appellant owned the bank, and although the latter had a separate set of directors, yet the directors of appellant owed a duty to know what was the condition of its property and must be held to know what with slight diligence, and the full opportunity existing in these cases, they could have discovered, and in view of all the evidence herein we cannot overrule the find-

ing of the lower court, necessarily included in its general findings, that the appellant had knowledge of the existence of the endorsements of the notes in question at the time of entering into the contract to which we shall now refer.

With the foregoing conclusion in mind, we proceed to consider that contract. It was made on June 9, 1921. It is executed by appellant on the one hand and Oscar Nicholson on the other, the former selling to the latter all of the stock in the respondent bank for the consideration of $5000 cash and 200 shares of the preferred and 50 shares of the common stock of appellant corporation. The contract provides, as already mentioned, that Nicholson was to take care of certain discounts of the bank, including those made by appellant in its behalf; and to show that the latter considered itself the owner of all the property of the bank and not only the stock, appellant agrees ''to assign, sell and transfer to said party of the second part (Nicholson) all of the assets of the said The Farmers State Bank of Riverton of every kind and nature.'' The contract further provides:

''The party of the first part (appellant) further stipulates and agrees that they will specifically guarantee the following bills receivable which have been segregated and shown in a schedule hereto attached and made a part hereof, marked Schedule B.

It is mutually understood and agreed that any of the paper shown in schedule B hereto attached shall be taken over by the second party when such paper or any part of it, is reconstructed and placed in a condition satisfactory to the party of the second part, and the said party of the second part shall give the party of the first part notice for a reasonable length of time before the payment of such paper shall be demanded; and in case the party of the second part may request the party of the first part to use its actual endorsement on any of the paper listed in schedule B for the purpose of rediscount, then the party of the first part shall endorse the same as requested.''

Counsel for appellant contend that the foregoing consti-
tutes nothing but an agreement to endorse the notes men-
tioned for rediscount purposes only. The contention is pos-
sibly based on some of the testimony of Nicholson wherein
he stated that he wanted the guaranty so that the paper
could be rediscounted. But the agreement set forth is not
so limited. The first sentence plainly and unmistakably
guarantees the payment of the notes mentioned in schedule
B. The contract further provides that Nicholson shall take
over the paper "when reconstructed and placed in condi-
tion satisfactory;" that is to say, that the appellant should
be released from such guaranty only upon the fulfillment of
the conditions mentioned. It is further plainly evident
from the foregoing contract that it was at least partially
intended for the benefit of the bank. The agreement that
actual endorsements of the notes should be made for the
purpose of rediscount plainly indicates that such endorse-
ments should be made for the bank, for it was the owner
of the notes, and it and not Nicholson personally would re-
discount them. Further than that schedule B is headed as
follows: "Notes belonging to the Farmers State Bank of
Riverton, Wyoming, which are guaranteed by Investors
Guaranty Corporation of Riverton, Wyoming." Here is
no limitation; the indication is that the guaranty was made
for and to the bank. Later in the year, on October 27, 1921,
a contract was prepared by appellant corporation and
signed by its president, purporting to be entered into with
respondent bank, and making provision for appellant to
convey to said bank certain lands in satisfaction of some
17 of the notes mentioned in schedule B. The contract was
never in fact fully executed or delivered, the reasons for
which do not clearly appear, but it sheds light on the pre-
vious transaction. A recital therein is to the effect in fact
that said respondent bank has "acquired from the party of
the first part (appellant) the certain notes and obligations
of which the party of the first part has guaranteed the pay-
ment," setting forth the 17 notes above referred to. On

the same day, viz: October 27, 1921, the above mentioned contract was authorized at a meeting of the board of directors of appellant, with five directors present, including Nicholson and Luikart, and the minutes recite that the land is to be turned over to the bank ''for certain notes that the Investors Guaranty Corporation guaranteed to the bank at the time of the sale of said bank.'' In the foregoing draft of contract, the sale made on June 9th, 1921, was evidently treated, not as a sale to Nicholson, but as a sale direct to the bank.

With these facts before it, the lower court held that the endorsements originally made by appellant, through its manager, were ratified; evidently believing that the special guaranty made in the Nicholson contract was made, at least partially, with the previous endorsements in mind. Before drawing our conclusion we must mention some principles of law which we deem applicable to this subject. It is true, as contended by counsel for appellant, that, strictly speaking, the ownership of all the stock of a corporation does not give the owner any title to the corporate property; that two corporations, separately organized, though with the same officers and directors, will not ordinarily, or lightly, be regarded other than as distinct entities, with power to contract with each other, subject to the rule that the transactions between them will be set aside, if not fair. But the law is also well settled that when necessary to preserve rights or promote justice, courts, at times, will look beyond mere forms and corporate entities. In the case of Interstate Tel. Co. v. B. & O. Tel. Co., 51 Fed. 49, 54 Fed. 50, 4 C. C. A. 184, it appears that the Baltimore & Ohio Railroad company organized and controlled a telegraph company to do certain of its telegraph work, and it was held that the latter was merely the agent of the railroad company, a mere name in fact, under which the railroad did business. In Fourth National Bank v. Portsmouth Cotton Oil Refining Corporation, C. C. A. 284 Fed. 718, it was held that if one corporation is wholly under

the control of another, the fact that it is a separate cor-
porate entity does not relieve the latter from liability for
the acts of the former. The same principle variously ap-
plied, is laid down in Foard Co. v. State of Maryland, 219
Fed. 827; 135 C. C. A. 497; In Re Watertown Paper Co.,
169 Fed. 252, 94 C. C. A. 528; See also In Re Muncie Pulp.
Co., 139 Fed. 546, 71 C. C. A. 530; Pittsburgh & Buffalo
Co. v., Duncan, 232 Fed. 584, 146 C. C. A. 542; Day v.
Postal Tel. Co., 66 Md. 354; 7 Atl. 608; Martin v. D. B.
Martin Co., 10 Del. Ch. 211, 88 Atl. 612, 102 Atl. 373. See
Cook on Corp. (8th Ed.) Secs. 663, 664, where the cases
on this subject are collected. In the foregoing cases cited,
the corporations were theoretically distinct but practically
one, and effect was given to the situation accordingly.
That is substantially the situation here before the contract
with Nicholson was made. Appellant and respondent
bank were then theoretically two distinct entities, but,
practically, the bank was owned and controlled by appel-
lant, and, disregarding forms, the appellant was, in equity,
the owner of all of the notes and property of the bank,
subject, of course, to the payment of the debts of the lat-
ter. Then a new situation was created. By virtue of the
sale of the bank to Nicholson, by transferring all of its
rights in the bank, appellant severed its control of respon-
dent, which thereupon, instead of being a distinct entity
largely only theoretically, became such in fact, and then
for the first time became, as it were, fully *sui juris,* with
separate and independent control and ownership of its
property. Surely this change in the situation must have
its bearing on the case. The transfer and contract provid-
ing therefor were, as we have seen, made at least partially
for the benefit of the bank, and, hence, the transfer may,
in a sense at least, or partially, be justly considered as
having been made direct to the bank, and this, as we have
noticed, was in fact the very view taken by appellant or
its president in the draft of an intended contract, dated

October 27, 1921. The property transferred included notes with appellant's endorsements. The existence of the endorsements the latter knew. For the transfer it received and retained $5000 in cash and other property, and it must, therefore, in so far as not inconsistent with the contract of sale pursuant to which the transfer was made, be held to have ratified the endorsements, for it cannot receive and retain the benefit of the sale and at the same time repudiate its obligation thereunder. We might add here that, under this view of the case, nothing is left of the contention of appellant, in so far as the endorsements above considered are concerned, that there is no consideration therefor. A consideration paid for the ratification would, we think, have the same effect as though the consideration had been paid for the original endorsements. It was not necessary that the consideration should be paid directly by respondent bank. Where a contract is made for the benefit of a third party, the consideration may be paid by some one other than the latter. 13 C. J. 712; Utah Nat. Bank. v. Nelson, supra.

In any event—reverting to the question of ratification —the appellant knew when the sale to Nicholson was made that the control of all of the property of the bank would pass out of its hands into other agencies of the bank. It also knew, as stated, that the notes included in the sale contained its endorsements; that these might be taken at their face value, and might be sought to be enforced. Had the bank sold the notes to third parties, as it might have done, it is readily seen that, at least if sold before maturity, appellant could not have escaped liability to the purchaser. It is almost impossible to believe that with the knowledge of outstanding endorsements, even though intended only for the limited purpose of rediscount, appellant should, carelessly and in utter disregard of self-protection, have failed to make provision for these endorsements so outstanding. We think that the only reasonable

conclusion can be that it was, at least partially, the inten-
tion to make such provision through and by virtue of the
special guaranty then given, which, therefore, may well
be regarded as a ratification of the previous endorsements
contained on the notes, in so far as they are mentioned in
schedule B of the Nicholson contract. And inasmuch as
this contract contemplates liability of appellant on the
notes mentioned in said schedule B not only to the parties
with whom the notes might be rediscounted, but to the
bank as well, we see no good reason why the ratification of
the endorsements on these notes should not be considered
as contemplating the same liability.

7. The foregoing discussion, however, includes only the
notes covered in the special guaranty of the Nicholson
contract. Five of the notes included in the cases at bar
are not mentioned therein. We cannot see how it can be
said that where a ratification, as here, is limited to certain
definite notes, that it could, by implication be extended to
other notes as well. It would, on the contrary, seem that
in such case there is at least an implied understanding
that the ratification is limited to the notes so specified.
That becomes clearer when we consider the evidence.
That shows that in the negotiations preceding the making
of the contract, Nicholson made an effort to get as many
of the notes included in the special guaranty as possible;
the directors of appellant tried to get as many as possible
excluded therefrom. Some of the notes were at some
stages of the negotiations included, at other stages ex-
cluded therefrom. Schedule B, which contains the notes
specially guaranteed, was the result of a compromise. The
negotiations subsequent to the Nicholson contract were all
limited, and intended to be limited to the notes included in
schedule B. There is little, if any, substantial evidence
to the contrary. We cannot regard as important the state-
ment in the minutes of the board of directors held subse-
quent to the commencement of the suits herein, that Oscar

Rohlff said that he had made arrangements with Luikart for renewing the notes in suit. It does not appear that the appellant authorized the action of Rohlff. In any event such arrangement, if attempted to be made, was not successful, was evidently made to settle a controversy, and cannot be considered very material in determining what notes were or were not ratified. There is in the record a draft in pencil of an apparently intended contract, signed by H. W. Kingery, as president, on behalf of appellant, which mentions the Wilk note, a note not covered by schedule B aforesaid. This draft of a contract is dated October 27, 1921. But it was supplanted by a typewritten draft, dated the same date, already hereinbefore referred to, under which certain lands were intended to be turned over to the respondent bank for 17 of the notes included in schedule B. The typewritten draft, made after a meeting of the board of directors, does not mention the Wilk note, and the inclusion of that note in the pencil draft was clearly a mistake, and the whole evidence satisfies us of the correctness of the claim of Mr. Kingery that he refused to endorse any notes not included in schedule B.

Counsel for respondent bank argue, however, that the endorsements on all of the notes were ratified because the appellant received and retained the benefit thereof. They have not pointed out to what benefit they refer. The benefit received by appellant under the Nicholson contract was received and retained for certain specific purposes and equivalents—the appellant received the cash and stock and gave in return its guaranty, limited to certain notes. The principle referred to, viz: that ratification follows retention of benefits received, is not of universal application. Ratification is a voluntary act and cannot be inferred from not doing something that cannot be done. Thus it is held, that the rule of law mentioned is not applicable, if the principal receives a benefit, the return of which is not possible. Mechem, Agency (2nd Ed.) Secs.

435, 436. If counsel for the bank refer to·the benefit received by appellant by reason of keeping the bank solvent, they have not pointed out how that benefit can in any way be returned. Moreover, an apparent benefit might, in fact, be a detriment, and it may not have been of advantage.to appellant simply to keep the bank solvent while incurring, perhaps, the risk of being itself engulfed in bankruptcy as a result thereof. Some of the notes in suit now under consideration, it is true, represent loans made to tenants of appellant. It is apparent, however, that. these loans cannot be collected from the tenants, the benefit to appellant, if any, could probably not be measured or restored, and it is, therefore, difficult to see how these loans can be charged to the latter under the theory that the transactions were ratified because of the benefit received and retained in connection with these loans.

8. We come then to the question as to whether or not there was previous authorization to make the endorsements. Authority may be express, which, however, is not claimed in this case. But express authority, formal action, is not always essential, as seems to be contended by counsel for appellant. The law is well settled that authority may be implied from a course of conduct, during which the principal, including a board of directors, habitually permits the agent to act. Cook, Corporations, Sec. 712; Thompson, Corporations, Vol. 4, Sec. 1070; Union Mining Co. v. Rock Mt. Nat'l. Bank, 2 Colo. 248, 257; Fitch v. Lewiston Steam Mill Co., 80 Me. 34, 12 Atl. 732; Aetna Explosives Co. v. Bassick, 176 App. Div. 377, 163 N. Y. S. 917; Jones v. Stoddart, 8 Idaho 210, 67 Pac. 650; Bank v. Rutland, 30 Vt. 159; Sherman v. Fitch, 98 Mass. 59; Jones v. Williams, 139 Mo. 1, 39 S. W. 486, 40 S. W. 353, 37 L. R. A. 682, 61 A. S. R. 436, 446; Southgate v. The Atlantic etc. R. Co., 61 Mo. 89; Smith v. Bank, 72 N. H. 4, 54 Atl. 385. It is claimed by counsel for respondent bank that such course of conduct is shown in this case. Testimony

showing authority of Luikart to endorse notes in order
to rediscount them is relied on.  Luikart testified:

"Why we would take notes to the Investor's Guar-
anty Corporation or the Farmers State bank, as the *occa-
sion might require;* if it was the Farmer's State Bank, we
would place the endorsement of the Investor's Guaranty
Corporation on the back of that note, *if we needed the
note,* or if it was a tenant's note, we would place that on
it to make that more of a merchantable note, or better se-
cured note and rediscount it and use it in our business.
If it was made out to the Investor's Guaranty Corpora-
tion, we always endorsed it at once and placed it in our
files, and then used it *of we needed to.*"  Other testimony
appears in the record to the same effect, and we have al-
ready referred to meetings of the board of directors of
appellant which authorized Luikart to endorse or guaran-
tee notes of the respondent bank for the purpose of redis-
counting them at Omaha and other places.  It is the con-
tention of counsel for appellant that authority of Luikart
to endorse notes for the purpose of rediscounting them is
no authority for endorsing them, so as to hold appellant
responsible thereon to the respondent bank.  We think
that this contention must be sustained.  If A agrees, either
for accomodation or for a consideration, to endorse the
notes of B in order to enable the latter to rediscount the
notes to C, and the notes are in fact so rediscounted, A
would be liable to C; but such an agreement is not one to
pay the note to B.  And so if A corporation authorizes its
agent X to make such first mentioned agreement for it, the
authority so given would not permit X to make an agree-
ment to pay B, since that would be an entirely different
contract from the one authorized to be made.  Hence we
cannot see how the foregoing testimony, standing alone,
would in any way sustain the contention of respondent
bank herein.  In the absence of qualifying evidence, au-
thority to endorse notes, would, probably, be taken as au-
thority to endorse for all purposes implied in an endorse-

ment.  But in this case the evidence of authority is inextricably interwoven with that showing the authority to be limited.  In no instance was the appellant, at least to the knowledge of any officer other than Luikart, called on to pay any note to the bank pursuant to the endorsement. There is testimony in the record that in March and in May, just previous to the sale of the bank to Nicholson, some of the worthless notes in the bank were by Luikart transferred to appellant in return for better notes.  Whether this was done by him because of the endorsements of appellant on the notes of the bank or not, does not appear. It would seem that it was rather done by an assumed authority on the part of Luikart to do whatever he thought best for the interest of the respective parties, and under stress of circumstances.  No officer of appellant other than Luikart is shown to have had any knowledge thereof, until at least the time of the sale of the bank to Nicholson, and the two isolated instances, just previous to such sale, could, in any event, not well be deemed sufficient to create or constitute a customary course of conduct from which authority to make endorsements, unlimited in its scope, could be inferred.  Not, accordingly, finding how the appellant can under the foregoing evidence, be held liable on the notes not ratified, we turn, therefore, to examine whether such liability may arise by reason of the interrelation of the two corporations, the management by Luikart of both, and the authority of Luikart pursuant to, and in connection with, such management.

9.    Where a person occupies a dominant position in two corporations, as did Luikart here, the law imposes on him the obligation to see that both corporations are treated fairly. · Truman v. The Cochlin Machinery & Supply Co., 11 Ohio App. 220.  This is an application, or extension, of the principle that while two corporations which have in common the same manager or directors may contract with each other, the contracts must be fair.  Corsicana Nat'l.

Bank v. Johnson, 251 U. S. 68, 40 Sup. Ct. 82; 64 L. ed. 141; Fletcher, Cyc. Corporations, Secs. 2377-2403. The burden of proof of showing such contracts entered into between the two corporations to be fair lies on the party who would sustain them. Corsicana Nat'l. Bank v. Johnson, supra; Geddes v. Anaconda Mining Co., 254 U. S. 590, 41 Sup. Ct. 209, 65 L. ed. 425; Fletcher, supra, Sec. 2389. Whether or not that should be true in all cases we need not decide, but in view of the fact that Luikart is now part owner of the bank and he was the manager making the contracts in the cases at bar, we see no reason why a different principle should be applied here.

We must determine the rights of the parties as to the endorsements of notes not included in the Nicholson contracts with the foregoing principles in mind. Luikart, in order to treat the appellant fairly, had no right, at least without authority of the board of directors of appellant, to place the appellant's endorsement on the notes of the bank, and as we have seen, he had no such authority from said board of directors except for rediscount purposes, unless in order to carry out the principle of fairness above mentioned, that authority arises in certain instances from the special circumstances heretofore and hereafter referred to, namely, that loans were made to tenants, etc., of the appellant for the latter's benefit. On the other hand, it was the duty of Luikart, in order to treat the bank fairly, to make from the funds of the latter only loans that were amply secured, and not loans merely for the benefit of appellant. The board of directors of appellant had no right to order, direct or authorize him to make loans from the funds of the bank under any other condition, and if in fact it authorized him to make loans from the bank to appellant or for its benefit, that could be done only with the understanding that these loans so made should be amply secured. Morowitz, Private Corp., Secs. 529, 530; Bridgens v. Bank, (C. C.) 66 Fed. 9; Martin v.

D. B. Martin Co., supra; Noyes, Intercorporate Relations, Sec. 300; Cook, Corp. (8th Ed.) Secs. 663, 664. When we speak, in this connection, of loans made for appellant's benefit, we do not mean merely loans that ultimately turned out to be a profit to appellant. That would be too narrow a construction when applied here. If a loan was made from the money of the bank, but mainly or entirely for the purpose of advancing the interests of appellant, by enabling, for instance, a tenant of appellant to farm and cultivate appellant's lands, then the loan may properly, in this connection, be said to have been made for appellant's benefit, even though, as a matter of fact, by reason of failure of crops, poor cultivation or other reasons, the loan to the tenant turned out badly. Where there is previous authorization, the question as to whether or not a benefit received can be restored does not, as in the case of ratification, arise. Turning, then, to the evidence, we find that Luikart managed the business of appellant as well as the bank, and was permitted to do about as he pleased. McNish, the president of appellant up to the time of the Nicholson contract, testified that, generally speaking, Luikart, as manager, was authorized to sign the name of the company, meaning thereby, evidently, that Luikart could bind the company thereby. Rohllf, a director of appellant, testified that he knew that money was being loaned to the latter's tenants to carry on their farming operations, and heard these loans discussed somewhat. There is testimony showing that the respondent bank was organized at least partially for the purpose of financing the tenants, the farms and the interests of the appellant, and that this was in fact done for several years. The bank was conducted as that of the appellant and the business of the two corporations was largely conducted as one. Luikart, as stated before, testified that the directors of appellant knew what he was doing, that he told them about it or various parts of it at meetings held at different times.

It was his duty to find tenants for the land. He bought all of the farms owned by appellant, signed all the leases alone, looked after the farms and was, in short, evidently permitted to do whatever he thought best in connection therewith. The foregoing, and other evidence in the record, is such that we do not feel justified in reversing the trial court in finding, as it evidently did, authority in the manager to make loans to finance the tenants and farms of the appellant, and do so through the bank. The directors of appellant knew that in making through the bank loans which were really made by, and for the interest of, appellant, he would be violating his duty in making them unless he took ample security. It can hardly be contended that Luikart was authorized to make only loans that were amply secured. So-called colonists were among the tenants, many of whom, no doubt, had little or nothing. It is a fact well known that landlords frequently finance tenants who do not have ample security, but from whom repayment is expected mainly through the operations of and on the farms. When, accordingly, appellant authorized or permitted the manager to make such loans for its benefit through the bank, there was necessarily implied, in that authority, power to carry out the principle of fairness above mentioned, which would include the right to guarantee to the bank the payment of such loans, and in determining whether such loans were actually made to the appellant, or for its benefit, the latter is chargeable with notice of the circumstances of the making of the loans which were known to Luikart, for these circumstances became known to the latter while acting within the scope of his authority. 14 C. J. 491; McCullough v. Gas Co., 213 Pac. 110, 62 Atl. 521. The form in which the loans, under the circumtsances in these cases, were made, should not be considered very material. Whether, when a loan was actually made by the appellant, the note was taken in its name, endorsed and the money paid out thereon by the

bank, or whether the note was taken to the bank, endorsed by appellant and the money paid out in that manner, the result would not be changed. Form cannot be made the cloak for injustice. With authority existing, which the court found to exist, the vital question in the class of loans now discussed is: Who in fact made the loan, or for whose benefit was it, in fact, made? If it appears that the making of it was of no benefit to appellant as a distinct, corporate entity, separate and apart from the benefit arising simply from the ownership of the stock in the bank, and that it was not interested therein as such separate, corporate entity, it should be absolved from its endorsement. Nor would the fact that the appellant was interested in seeing the loan made necessarily fix its liability; in such case the fact as to who actually made the loan or for whose benefit it was made, should be determined, aside from any direct testimony that may appear, from the relations of the appellant and respondent to the principal maker of the note, the security offered and given by him, and other circumstances that might appear; in fact, the question in such case would seem to hinge largely on this: Is it likely that the bank, if not under appellant's control, would have made the loan in any event without appellant's endorsement; or is it likely that it would not have made the loan, except only with the endorsement of appellant?

Applying these principles to the notes, the endorsements of which were not ratified by the Nicholson contract, we think that there is sufficient evidence in the record to sustain the lower court in holding that the endorsements on the Waltz and the Chisam notes were authorized. Whether they could also be held to have been ratified by acquiesence, we need not decide. The evidence aside from the testimony of Luikart that these loans were made by appellant, tends to show that they were originally made while Waltz and Chisam were tenants of the appel-

lant and in order to finance them; that the notes were not of value to the bank except with appellant's endorsement. It is not likely, therefore, that the respondent bank, if not under appellant's control, would have made the loans, except only with the endorsement of the appellant thereon.

We do not think that respondent bank has sustained the burden of proof, by the evidence in the record, to show the validity of the endorsements on the Wilk note or the Haun note of $1023.00. The testimony as to the Wilk note, while voluminous, is not left in a very satisfactory condition. It would seem, taking all of the evidence together, that both that note as well as the Haun note are renewals of former notes, the original loans having been made before Luikart became manager. Wilk was never a tenant of appellant, though interested in some of its property. Haun was not a tenant when the loan to him was made originally. The circumstances of the making of the loans, in their origin, or of their renewals, are not shown. We do not hold that the fact that the original loans were in fact made by the bank, and not for appellant's benefit, is necessarily determinative of the non-liability of the latter. Without now determining what must or must not be shown in order to hold the appellant liable, if at all, for these two notes, we might say that the future evidence may disclose that the renewals were in fact made by or for the benefit of appellant; that they would not have been made except only with appellant's endorsements; that at that time the bank could have had the loans paid, and would have had them paid, except only for the fact that it was for the interest and benefit of appellant to renew them; in short, the further evidence may show that the circumstances and facts governing the renewals were such that these renewals were equivalent to new loans made by or for the benefit of appellant, and if that should appear, we do not say that appellant should not be held liable to the same

extent as though the loans were absolutely new loans made at that. time. But no such circumstances appear in the record of these cases now.

10. We need say little more, if anything, on the question raised by appellant that there was no consideration for the endorsements as between the bank and the appellant. There was ample consideration, of course, in all cases where the loans were in fact made by the appellants, or for its benefit, and at least most of the loans involved in the cases at bar seem to have been so made. We have already considered the subject in connection with those notes covered by the special guaranty in the Nicholson contract. We. need not, accordingly, determine the question as to whether the mere fact that the endorsements added to the value of the bank and therefore necessarily benefitted appellant, was a sufficient consideration. See on that subject, however, particularly the case of Union Bank of Brooklyn v. Sullivan, 214 N. Y. 332, 108 N. E. 558, and see further Interstate Trust & Banking Co. v. Irwin, 138 La. 326, 70 So. 313; Ann Cas. 1917 C. 935; Kendall v. Klapperthal Co., 202 Pa. 596, 52 Atl. 92; Hunter v. Baker Motor Vehicle Co., (C. C.) 190 Fed. 665.

11. Luikart, the manager of appellant, became interested with Nicholson in the bank to the extent of one half interest therein, some time during the summer of 1921, after the latter had bought the bank from the appellant. There is testimony to indicate that Luikart had at least some thought of acquiring such interest even before the sale to Nicholson was consummated. Appellant sought to show that as a matter of fact Luikart had thought of buying such interest long previously and that it had already been agreed between Luikart and Nicholson prior to such sale that Luikart should purchase such interest. The main purpose of showing that appears to have been in order to demonstrate that Luikart acted fraudulently. The evidence was probably admissible to test the credibility of

Luikart. It was not and is not sought to set aside the contract made with Nicholson, and the foregoing evidence was, therefore, immaterial so far as that contract is concerned. If it is claimed that Luikart acted fraudulently in endorsing the notes, then we do not feel justified in reversing the evident finding of the trial court that there was not sufficient evidence to sustain such claim.

The judgment of the district court must accordingly be affirmed in all of the cases herein, except numbers 1148 and 1153, the Haun and Wilk cases, which must be reversed and remanded to the district court for a new trial, the latter in toto and the former as to the one note of $1023.00 involved in said case. The judgment in said case No. 1148 must be affirmed in so far as it involves the $1000 note sued on, which is included in schedule B attached to the Nicholson contract. And it is so ordered.

POTTER, Ch. J., and KIMBALL, J., concur.

NOTE—See 2 C. J., pp. 476, 496, 906, 914; 4 C. J., pp. 931, 935; 7 C. J., p. 713; 8 C. J., pp. 214, 215, 883, 887, 891, 1098, 1099, 1101; 13 C. J., p. 712; 14 C. J., p. 61; 14A C. J., pp. 126, 127, 349, 350, 365, 376, 394, 408, 410, 491, 492, 595; 31 Cyc. 257; 40 Cyc. 2683.